IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FREDDIE LEE BROWN, JR.,

                Plaintiff,

    v.

CASCADE MANAGEMENT, INC.,

                Defendant.

No. 3:15-cv-01585-HZ

OPINION & ORDER

Jeff Napoli
GILROY NAPOLI SHORT LAW GROUP
12755 SW 69th Avenue, Suite 200
Portland, OR 97223

Aaron Baker
Ashley Bannon Moore
BAKER LAW P.C.
1000 SW Broadway, Suite 2300
Portland, OR 97205

        Attorneys for Plaintiff

David P.R. Symes
LeiLani J. Hart
LITTLER MENDELSON, P.C.
121 SW Morrison, Suite 900
Portland, OR 97204

        Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Freddie Lee Brown, Jr. brought this employment discrimination action against his former employer, Defendant Cascade Management, Inc. Plaintiff brought claims under federal law, alleging race discrimination, harassment and retaliation under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e.[1] On October 17-25, 2017, Plaintiff's claims were tried to a jury. The jury returned a verdict in favor of Plaintiff on his harassment claim and awarded Plaintiff $200,000 in non-economic damages and $125,000 in punitive damages.

Plaintiff now moves for $587,479.50 in attorney's fees and $28,768.94 in costs.[2] For the reasons explained below, Plaintiff's motion is granted in part. Plaintiff is awarded $350,396.90 in fees and $21,011.89 in costs.

## STANDARDS

When an employee prevails on a § 1981 or Title VII claim, the court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant. 42 U.S.C. § 1988; 42 U.S.C. § 2000(e)-5(k).

///

///

---

[1] Plaintiff also initially brought claims under Oregon Revised Statute § 659A.030 but dropped these claims prior to the end of trial.

[2] The requested fees include payment for hours initially requested in Plaintiff's Motion for Attorney's Fees, ECF 104, and additional hours for time reasonably expended in preparing a reply to Defendant's response to Plaintiff's motion. *See* Pl. Mot. Suppl. Att'y Fees, ECF 127. Time spent by counsel in establishing the right to a fee award is compensable. *Davis v. City of San Francisco,* 976 F.2d 1536, 1544 (9th Cir. 1992). The Court reduces the fees for time spent on the fee petition by the same percentage as the overall lodestar reduction. *See Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 909 (9th Cir. 1995)("[A] district court does not abuse its discretion by applying the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award.").

# I.     Attorney's Fees

Under a fee-shifting statute, such as 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k), the "lodestar" method is used to calculate the attorney's fee award. *Staton v. Boeing Co.,* 327 F.3d 938, 965 (9th Cir. 2003). The court first multiplies the number of hours the prevailing party reasonably expended on the litigation times a reasonable hourly rate, in order to determine the "lodestar" amount. *Id.* If circumstances warrant, the court then adjusts the lodestar to account for the *Kerr* factors not subsumed within the initial lodestar calculation.[3] *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and therefore, it should only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). While it is not necessary to detail every numerical calculation, and across-the-board percentage adjustments are permissible, the court must provide "enough of an explanation to allow for meaningful review of the fee award." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001).

# II.     Costs

Under Federal Rule of Civil Procedure 54, costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Rule 54 creates a presumption in favor of awarding costs to the prevailing party. *E.g., Ass'n of Mexican–Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000). "[I]f a district court wishes to depart from that presumption, it must explain why so that the appellate court will be able to determine whether or not the trial court abused its

---

[3] Factors subsumed within the lodestar include the novelty and complexity of the issues, special skill and experience of counsel, quality of the representation, results obtained, and the superior performance of counsel. *D'Emanuele v. Montgomery Ward & Co.,* 904 F.2d 1379, 1383 (9th Cir. 1990).

discretion ... [and] explain why a case is not ordinary." *Id.* at 593. To rebut the presumption, the court may consider "the losing party's limited financial resources, misconduct on the part of the prevailing party, the importance and complexity of the issues, the merit of the plaintiff's case, . . . and the chilling effect on future . . . litigants of imposing high costs." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003) (citations omitted). The district court, however, "needs no affirmatively expressed reason to tax costs. Rather, it need only conclude that the reasons advanced by the party bearing the burden—the losing party—are not sufficiently persuasive to overcome the presumption." *Id.* at 946.

Costs taxable under Rule 54(d) "are limited to those set forth in 28 U.S.C. §§ 1920 and 1821[.]" *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005). Section 1920 lists the specific items a prevailing party may recover as costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920(1)-(6). The district court retains broad discretion to decide how much to award, if anything. *Padgett v. Loventhal,* 706 F.3d 1205, 1209 (9th Cir. 2013); *see also Arboireau v. adidas Salomon AG*, No. 01–105–ST, 2002 WL 31466564, at *4 (D. Or. June 14, 2002) (trial judge has "wide discretion" in awarding costs under Rule 54(d)(1)).

///

///

///

**DISCUSSION**

**I.      Amount of Attorney's Fees**

      **a.  Hours Reasonably Expended**

It is the fee claimant's burden to demonstrate that the number of hours spent on the case was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims.").

Plaintiff seeks compensation for 485.9 hours of work performed by attorney Jeff Napoli, 444 hours of work performed by attorney Aaron W. Baker, 388.6 hours of work performed by attorney Ashley Bannon Moore,[4] .9 hours performed by attorney Leah A. Johnson, 93.75 hours of work performed by attorney and former paralegal Veronica Rodriguez, and 175.2 hours performed by legal assistant LeAnne Carlsen. Pl. Mot. Att'y Fees 2, ECF 104. Mr. Napoli, Mr. Baker, and Ms. Bannon Moore all assert that their time and labor was reasonable, they were efficient with their time, and divided up tasks as efficiently as possible to prosecute Plaintiff's claims. Napoli Decl. ¶ 9; Baker Decl. ¶ 9; Bannon Moore Decl. ¶ 6.

Defendant objects to several categories of time spent by Plaintiff's counsel. Without repeating in detail each of Defendant's objections and Plaintiff's responses, the Court addresses each category of time and deducts time from Plaintiff's requested hours, as appropriate.

///

---

[4] The Court notes that Plaintiff asks for 377.2 hours for Ashley Bannon Moore and 11.4 hours for Ashley Bannon at a lower rate.

i.      Plaintiff's Staffing Model

Defendant argues that Plaintiff's use of two senior attorneys and one junior attorney resulted in significant inefficiencies and asks the Court to reduce Plaintiff's fee award by 40%. Def. Opp'n. 6–7. In support of this assertion, Defendant provides a declaration from Calvin Keith, "a long-time employment law trial lawyer in Portland" and notes the general lack of complexity and size of this case. Def. Opp'n. 6–7, Ex. B.

The Ninth Circuit has cautioned that the district court "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) (reversing the district court's decision to reduce a lawyer's hourly rate "in part because it thought that other firms could have staffed the case differently"); *see also Miller v. Schmitz*, 654 Fed. Appx. 261, 263 (9th Cir. 2016) (finding it was error for the district court to compare the amounts billed by lead attorneys and junior attorneys from both sides in determining the fee award). "The district court's inquiry must be limited to determining whether the fees requested by this particular legal team are justified for the particular work performed and the results achieved in this particular case." *Moreno,* 534 F.3d at 1115. The Court accordingly declines to impose an across the board reduction for any inefficiencies that resulted from Plaintiffs' staffing model.

ii.     Duplicative or Excessive Hours

Defendant contends that to the extent counsel's hours are duplicative they should be excluded from the lodestar calculation. Under certain circumstances, duplicative hours may be deducted. While "[a] party is certainly free to hire and pay as may lawyers as it wishes, [it] cannot expect to shift the cost of any redundancies to its opponent." *Nat'l Warranty Ins. Co. v.*

*Greenfield,* No. CV-97-1654-ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001). For example, "[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys. The same good 'billing judgment' requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument." *Id.* In determining whether hours were duplicative, courts should consider the complexity of the case or the extent to which the attorneys handled distinct aspects of the task billed. *See U.S. v. Montagne Development, Inc.,* 3:11-cv-01191-PK, 2014 WL 2334209, at *5 (D. Or. Mar. 10, 2014). "To correct for this duplication by two attorneys, the higher billing rate of the two attorneys should be allowed." *Miranda-Olivares v. Clackamas Cty.,* No. 3:12-CV-02317-ST, 2015 WL 5093752, at *8 (D. Or. Aug. 28, 2015); *see also Montagne Development, Inc.,* 2014 WL 2334209, at *5 (reducing duplicative hours for "multiple attorneys billing for the same mediation, the same conference with opposing counsel, or the same intra-office conference").

On this basis, the Court has reduced some the requested hours where they clearly overlap between multiple attorneys or attorneys and staff, cover the same subject matter, and are billed on the same day. *See* Appendix A. For example, as most of the depositions in this case lasted less than three hours and did not require the time of two senior attorneys, the Court has generally only allowed Plaintiff to recover fees for the attorney who ultimately took the deposition. Similarly, the Court disallowed the time spent by Mr. Napoli (the senior attorney with the lower billing rate) during trial as Plaintiff already had a more senior attorney and an associate in attendance. For the same reason, the Court only allowed the time Mr. Baker spent during the April 2017 3.5-hour settlement conference. However, the Court has allowed Plaintiff to recover fees for time that was not clearly duplicative, was reasonably necessary for coordination between

the two firms involved in this case, or otherwise ultimately resulted in cost savings, such as

where a more senior attorney spent time reviewing the work of a more junior attorney.

      iii.     Clerical Tasks

Defendant argues that "[c]lerical and administrative work is an overhead expense

accounted for in an attorney's hourly billing rate, and is not subject to reimbursement." Def.

Opp'n. 10. "It is well settled, both in this District and elsewhere, that it is inappropriate to seek

fees under a fee shifting statute for purely secretarial or clerical work." *Lafferty v. Providence*

*Health Plans*, No. 08-CV-6318-TC, 2011 WL 127489, at *5 (D. Or. Jan. 14, 2011) (citing

*Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should

not be billed at a paralegal [or lawyer] rate regardless of who performs them. . . .")).

Plaintiff's submissions are replete with hours associated with clerical tasks as noted in

Appendix B. For example, Plaintiff seeks to recover fees associated with Ms. Carlsen (a legal

assistant) calling to schedule videographers and court reporters, faxing and mailing letters, filing

motions, affixing bates numbers to exhibits, emailing documents, calculating mileage and cutting

checks for witness reimbursement, reviewing invoices, drafting subpoenas, and scheduling calls

with the Court. Similarly, there is a significant amount of attorney time that was spent on

scheduling, including scheduling depositions and conferences with the Court. But there is little

evidence in the record indicating that these tasks were so complex or contentious that they

warranted attorney time. Further, Plaintiff seeks to recover paralegal fees for the operation of

technology to display exhibits during trial with no evidence to suggest the use of this technology

was necessary to his success or justifies the $200 per hour cost that Plaintiff seeks. *Hunt v. City*

*of Portland*, No. CV 08-802-AC, 2011 WL 3555772, at *15 (D. Or. Aug. 11, 2011) (denying as

a *cost* the defendant's expense related to the use of a trial technology specialist). Accordingly, the Court will not permit Plaintiff to recover many of these fees.[5]

      v.        Vague Entries and Block Billing

Citing the District Court's policy against block billing and vague billing, Defendant argues that a reduction in fees is warranted in this case. The burden is on the party requesting fees to provide sufficient documented evidence of the hours claimed, the court should reduce hours that are "excessive, redundant, or otherwise unnecessary." *U.S. v. Montagne Deve., Inc.*, No. 3:11-CV-01191-PK, 2014 WL 2334209, at *5–6 (D. Or. Mar. 10, 2014), report and recommendation adopted as modified, No. 3:11-CV-01191-PK, 2014 WL 2333777 (D. Or. May 29, 2014) (internal citations and quotations omitted). This District Court has cautioned counsel that billing "items such as 'conference,' 'telephone call with . . . ,' or correspondence to. . .' with no description of the subject of the conference, the call, or the correspondence. . . . makes it nearly impossible to assess the reasonableness of the requested time."[6] The U.S. District Court for the District of Oregon also recommends that attorneys refrain from block billing as this makes "assessing the reasonableness of the time spent on a particular task extremely difficult."[7] "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Welch v. Metro Life Ins. Inc.*, 480 F.3d 942, 948 (9th Cir. 2007).

---

[5] There are some fees identified by Defendant as clerical that the court has allowed. For example, the preparation of court documents or scheduling matters that appeared contentious and important to discovery in this case, such as the scheduling of the deposition of Marie Matthews.

[6] *See* Message from the Court Regarding Fee Petitions, https://www.ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions.

[7] *See* Message from the Court Regarding Fee Petitions, https://www.ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions.

Thus, it is "reasonable for the district court to conclude that [the fee applicant] fail[s] to carry [its] burden" where block billing is used because it "makes it more difficult to determine how much time is spent on particular activities." *Id.* Under such circumstances, the district court can impose a reduction on the hours that are block billed. *See id.* ("[T]he district court may properly impose a reduction for block billing, but it should explain how or why the reduction fairly balances those hours that were actually billed in block format." (internal quotations and citations omitted)); *see also Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-CV-00239-HZ, 2013 WL 4012708, at *10 (D. Or. Aug. 5, 2013), *amended*, No. 3:09-CV-00239-HZ, 2014 WL 837389 (D. Or. Mar. 3, 2014), aff'd, 649 F. App'x 585 (9th Cir. 2016) (applying a 25% reduction for block billing, vague entries, and billing in large increments to those entries that suffer from block billing and vagueness); *Nance v. May Trucking*, No. 3:12-cv-01655, 2014 WL 6633111, at *5 (D. Or. 2014) (same).

There are a number examples of block billing in this case, and many of the offending entries are also vague, duplicative, or include administrative tasks. *See* Appendix C. For example, Mr. Baker seeks recovery for 3.6 hours doing the following: "Edit Pl 4th RFP; email to co-counsel; Review email string Napoli & Hart Re: Bunes & Matthews Deposition Scheduling; Review Email Re: Plaintiff 4th RFP; Review Email re: Deposition Exhibits." As this circuit has recognized, block billing may increase time by 10% to 30%. *See Welch*, 480 F.3d at 948 (noting that the district court has the authority to reduce fee awards for block billing and that a California State Bar Committee report concluded block billing could increase time by 10% to 30%). Accordingly, the Court will reduce those hours identified as block billed in Appendix C by 20%. *See Norton v. Maximus Inc.*, CIV. NO. 1:14-30 WBS, 2016 WL 6247004, *4 (applying a 20% reduction to block-billed hours); *Nance*, 2014 WL 6633111, at *6 (reducing block-billed hours

by 25%). The Court, however, has allowed certain block-billed entries where the tasks were all clearly identified with one subject matter such that the Court could independently determine that the time spent was reasonable. *Norton*, 2016 WL 6247004, at *4 ("The court also retains discretion not to reduce hours that are purportedly block-billed if those time entries are detailed enough for the court to assess the reasonableness of the hours billed." (internal citations and quotations omitted)). For example, the Court has allowed entries such as the two-hour entry for "Meeting to assist with preparation of Jury Instructions; research on case law for legal authority." It is not difficult for the Court to determine that the two-hours spent on this task was reasonable.

Similarly, the Court has found vague entries in Plaintiff's request. These entries largely include language such as "Email to Court," "Review/Receive fax from client," or "Email to Hart regarding depositions." The Court has reduced Plaintiff's hours for various vague entries that made it difficult to determine whether the hours billed were reasonable. *See* Appendix D.

vi.     Unsatisfactory Work

Defendant also argues that the Court should reduce Plaintiff's fee request for work that was "non-complaint," claiming that it constitutes unnecessary work. Specifically, Defendant asks the Court to exclude time spent on Plaintiff's initial witness list, which was insufficiently detailed and required Plaintiff to submit a supplementary list; Erica Brown, who was disallowed as a witness because she was not disclosed in discovery; and the trial subpoena for Summer Russell. The Court, however, cannot say with certainty that these tasks were "unnecessary." For example, Plaintiff contends that Ms. Brown, Plaintiff's daughter, provided counsel with other information relevant to Plaintiff's emotional distress. Similarly, Plaintiff contends that the initial

witness list was a building block for the subsequent compliant filing. The Court, accordingly, declines to deduct these hours from Plaintiff's request.

### b. Time Spent on Unsuccessful Claims

Defendant contends that no attorney's fees should be allowed for Plaintiff's lost discrimination and retaliation claims. Def. Opp'n. 5. Defendant contends that the discrimination and retaliation claims are "severable, in part because the underlying factual allegations and witnesses were distinct" as were the forms of relief sought. *Id.* Fact witnesses such a Dana Plop, Summer Russell, Carly Rush, and Stephanne Beauchamp were only relevant to Plaintiff's retaliation and harassment claims, and back pay and front pay were unavailable for Plaintiff's harassment claims. *Id.* at 6. Defendant further argues that Plaintiff's fees should be decreased because Plaintiff only recovered 10% of his $5 million demand on his harassment claim. *Id.* at 5. Defendant therefore suggests a 40% overall reduction in all hours billed for the lost claims in addition to excluding time explicitly attributed to the lost claims.

The degree of success obtained and the relationship between successful and unsuccessful claims are factors the district court considers in determining the lodestar amount. *See Gates v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1992) ("[T]he favored procedure is for the district court to consider the extent of the plaintiff's success in making its initial determination of hours reasonably expended at a reasonable rate, and not in subsequent adjustments to the lodestar figure."). In *Hensley v. Eckerhart*, the Court held:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claim, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

461 U.S. 424, 440 (1983); *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901

(9th Cir. 1995) (explaining that if claims are distinctly different, "the hours spent on the

unsuccessful claim should be excluded in considering the amount of a reasonable fee"). The

claims are unrelated if they are different both legally and factually; claims are related "if they

involve a common core of facts *or* are based on related legal theories." *Dang v. Cross*, 422 F.3d

800, 813 (9th Cir. 2005) (emphasis in original). "At bottom, the focus is on whether the

unsuccessful and successful claims arose out of the same course of conduct." *Id.* (internal

citations and quotations omitted); *see also Clark v. Quick Collect, Inc.*, No. 04-CV-1120-BR,

2006 WL 572157, at *4 (D. Or. 2006) (finding that claims that arose out of the defendant's

efforts to collect the same debts were unrelated because "the operative facts and legal theories

behind [the plaintiff's] unsuccessful claims . . . are distinctly different from the legal theory and

factual basis of [the plaintiff's] successful claim").

 "Once a district court concludes that a plaintiff has pursued unsuccessful claims that are

unrelated to the successful claim, its task is to exclude from the calculation of a reasonable fee all

hours spent litigating the unsuccessful claims." *Schwarz*, 73 F.3d at 904. The court may either

"attempt to identify specific hours that should be eliminated, or . . . simply reduce the award to

account for the limited success. The court necessarily has discretion in making this equitable

judgment." *Hensley*, 461 U.S. at 436–37. "[A] district court does not abuse its discretion when it

resorts to a mathematical formula, even a crude one, to reduce the fee award to account for

limited success." *Schwarz*, 73 F.3d at 905.

 The Court is not persuaded that in this case the time spent on various witnesses—

including Dana Plop, Summer Russell, Carly Rush, and Stephanne Beauchamp—is completely

severable from the other claims in this case. While Plaintiff's unsuccessful discrimination and

retaliation claims are factually and temporally distinct from his successful hostile work environment claims, the testimony of these witnesses did not strictly focus on Plaintiff's termination. These witnesses provided testimony related to the ongoing harassment that Plaintiff suffered after transferring to a new job site, Defendant's knowledge of the harassment, and Defendant's human resources policies more generally. The Court declines therefore to deduct from Plaintiff's hours time spent on these witnesses specifically.

However, the Court is aware that Plaintiff did not succeed on two of the three claims brought against Defendant in this case. Because economic damages were only relevant to the two unsuccessful discrimination and retaliation claims the Court will deduct time spent on economic damages issues. *See* Appendix E. Further, despite some overlap between the relevant witnesses to all three claims, a reduction for hours expended on the retaliation and discrimination claims is warranted given how factually and temporally distinct Plaintiff's claims were. The alleged retaliation and discrimination took place a few years after the hostile work environment claim arose, and it involved different decision makers and distinct evidence. However, because the litigation overwhelmingly focused on the hostile work environment claim and Plaintiff's success on this claim was substantial, the Court will only reduce Plaintiff's fee request by 20%. *See Schwarz*, 73 F.3d at 905 (affirming the district court's decision to reduce part of a fee award by 75% and concluding that "having properly characterized the unsuccessful claims as unrelated, the district court correctly followed the mandate of *Hensley* to identify the hours [the plaintiff's] attorneys spent litigating the dismissed claims, and to reduce the compensable hours accordingly").

///

///

### c.  Reasonable Hourly Rate

In determining the reasonable hourly rate, the Court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1033 (D. Or. 1996). In determining a reasonable hourly rate, "the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty.,* 815 F.2d 1258, 1263 (9th Cir. 1987). Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates. *See* Local Rule 54-3 Practice Tip ("[T]he court requests that fee petitions address the Economic Survey and provide justification for requested hourly rates higher than reported by the Survey."); *Roberts v. Interstate Distrib. Co.,* 242 F.Supp.2d 850, 857 (D. Or. 2002) (in determining the reasonable hourly rate, the District of Oregon uses the OSB Economic Survey "as an initial benchmark" and attorneys should "provide ample justification" for deviating from the Survey rates). The most recent OSB Economic Survey was published in 2017.[8] Courts may also consider "the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno*, 534 F.3d at 1114 (9th Cir. 2008). In making this determination, "the Court notes employment discrimination claims usually do not involve novel issues of law." *Roberts*, 242 F. Supp. 2d at 857.

---

[8] The most recent OSB Economic Survey is available at
https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf

Plaintiff seeks fees based on an hourly rate of $450 for Mr. Napoli, $450 for Aaron W. Baker, $250–$270 for Ms. Bannon Moore, $350 for Ms. Johnson, $200 for Ms. Rodriguez, and $125 for Ms. Carlsen. Plaintiff provides information as to the background and experience of these attorneys and also relies on the declarations of James McCandlish, Matthew Ellis, Robert K. Meyer, Shelley Russell, and Wm. Bruce Shepley. Defendant objects only to the requested hourly rates for Mr. Napoli and Ms. Rodriguez.

### i. Mr. Napoli

Mr. Napoli seeks $450 per hour. He has practiced law for eighteen years and is admitted to the Oregon State Bar. Napoli Decl. ¶ 2. For the last fourteen years, he has practiced employment law with a specialty in sexual and racial harassment claims. *Id.* He has prior trial experience as a Deputy District Attorney. *Id.* at ¶ 5. He has also tried numerous state civil and criminal cases and has had one other jury trial in federal court in a § 1983 case for excessive force and unlawful arrest. *Id.* at ¶ 6. He believes that these skills in employment litigation and trial added significant value to this case. *Id.* at ¶ 10. He assets that $450 per hour is his customary fee, Napoli Decl. ¶ 4, and that he has billed multiple criminal clients "well over $400 per hour," Napoli Reply Decl. ¶ 1. Lake Oswego Municipal Court Judge Wm. Bruce Shepley opines that Mr. Napoli "has always demonstrated the highest professional standards when representing his clients" and "is clearly one of the very finest attorneys that have appeared in his court and among those I have dealt with in [his] private practice." Shepley Decl. ¶ 3.

According to the 2017 OSB Economic Survey, the average hourly rate for Portland attorneys with eighteen years of experience is $334 and the median hourly rate is $325. The 75th percentile hourly rate is $400. Defendant argues that Mr. Napoli should be awarded $325 per hour and notes that another attorney in this case—Leah Johnson—has more experience and bills

at a rate of $350 per hour. Defendant also notes that Mr. Napoli has provided little to justify or support his requested rate. In light of the evidence in the record, the Court agrees with Defendant that the requested rate of $450 per hour is not reasonable. However, in light of Mr. Napoli's extensive trial background, the Court finds that a rate of $375 per hour—which falls between the median rate and the 75th percentile—is reasonable in this case.

    ii.   Mr. Baker

Defendant does not object to Mr. Baker's requested rate of $450 per hour. Mr. Baker has practiced law for twenty-five years and has specialized in employment law for twenty-one years. Baker Decl. ¶ 2. Fifteen of those years have been dedicated for employee-side work. *Id.* He has prosecuted and tried employment cases in federal and state court, including a $19 million verdict in a four-plaintiff discrimination case in federal court in 2008. *Id.* at ¶ 6. He also has previous experience as a law clerk for two Lane County trial judges. *Id.* at ¶ 6. Mr. Baker's fee request is supported by the declarations of Mr. Meyer and Mr. McLandish. Mr. Meyer, an employment lawyer who has worked on several employment cases with Mr. Baker, opines that $450 per hour is a reasonable fee for Mr. Baker's work. Meyer Decl. ¶¶ 7, 8. Mr. McLandish—a litigator, employment lawyer, and member of the Oregon bar for 41 years—states that he is familiar with Mr. Baker's reputation and experience and believes that Mr. Baker's requested fee is reasonable. McLandish Decl. ¶¶ 2, 6, 7.

According to the 2017 OSB Economic Survey, the average hourly rate for Portland attorneys with twenty-five years of experience is $395 and the median hourly rate is $415. The 75th percentile hourly rate is $475. The Court therefore finds Mr. Baker's requested rate of $450 per hour is reasonable.

///

### iii. Ms. Bannon Moore

Defendant does not object to Ms. Bannon Moore's requested rates of $250 and $275. Ms. Bannon Moore was admitted to the Oregon Bar in 2011 and practices in both state and federal court. Bannon Moore Decl. ¶ 2. During her six years as an attorney, she has been involved in employment, personal injury, and complex product liability and construction cases. *Id.* Her "current practice is dedicated to exclusively representing plaintiffs in employment law matters." *Id.* at ¶ 2. Ms. Bannon Moore's fee request is supported by the declarations of Mr. Ellis and Ms. Russell. Mr. Ellis is an employment lawyer with at least ten years of experience. Ellis Decl. ¶¶ 1–2. Based on his familiarity with Ms. Moore's skills, experience, reputation, and the rates generally awarded to attorneys in employment cases, Mr. Ellis opines that $275 per hour is a reasonable rate for her work. *Id.* at ¶ 6, 8. Ms. Russell is a partner at Crispin Employment Lawyers with extensive employment litigation experience. Russell Decl. ¶¶ 4–7. She also opines that Ms. Bannon Moore's requested rate is reasonable. *Id.* at ¶ 28.

According to the 2017 OSB Economic Survey, the average hourly rate for Portland attorneys with four to six years of experience is $249 and the median hourly rate is $250. The 75th percentile is $300. The Court finds that Ms. Bannon Moore's requested rates of $250 and $275 per hour are reasonable.

### iv. Ms. Johnson

Plaintiff seeks an hourly rate of $350 for Ms. Johnson. Johnson Decl. ¶ 4. Defendant does not object. Ms. Johnson is a litigator at Mr. Napoli's firm with over twenty years of experience as an attorney. *Id.* at ¶¶ 1, 4–5. Considering Ms. Johnson's declaration, the lack of any objection, and the rates in the OSB Economic Survey for attorneys with over twenty years of experience, the Court finds that Ms. Johnson's rate is reasonable.

v.   Ms. Carlsen

Plaintiff seeks $125 per hour for the work of Ms. Carlsen, a legal assistant at Mr. Napoli's firm. Carlsen Decl. ¶ 2. Defendant does not object. Ms. Carlsen graduated with an Associate's Degree as a legal assistant and has over 32 years of work experience as a legal assistant. *Id.* As there is no objection and this rate is far below the 25th percentile for the hourly rate charged by new attorneys in Portland, the Court finds that this rate is reasonable.

vi.   Ms. Rodriguez

Plaintiff seeks $200 per hour for the work of Ms. Rodriguez. Rodriguez Decl. ¶ 5. Ms. Rodriguez graduated from law school in December of 2016 and began working as a law clerk for Mr. Napoli in February of 2017. *Id.* at ¶ 2. Ms. Rodriguez also has a paralegal certificate, which she obtained at the University of San Diego in 2008. *Id.* at ¶ 3. She has six years of work experience as a paralegal. *Id.* at ¶ 3.

Defendant argues that Ms. Rodriguez's hourly rate is unreasonable because she was not a lawyer at the time of this litigation. Def. Opp'n 4. Defendant proposes reducing her hourly rate to $125 per hour based on her paralegal/law clerk experience. Plaintiff responds that the $200 hourly rate is reasonable given Ms. Rodriguez's law degree, paralegal certificate, and paralegal experience. Plaintiff also emphasizes that the requested rate of $200 is below the 25th percentile of the hourly rate for new attorneys, which is $207 per hour.

In 2014, this Court found that the rate of $125 per hour was a reasonable rate for a paralegal. *See Nance*, 2014 WL 6633111, at *4. There, the Court emphasized that "a reasonable hourly rate for a paralegal should not exceed that of a first-year associate." *Id.* (citing other cases from the District of Oregon). Ultimately, the Court concluded that that a rate of $125 per hour for a paralegal with eight years of experience was reasonable given the lack of evidence in the

record demonstrating that the individual in question had any paralegal certificates or other qualifications. *Id.* At the time, the 2012 survey showed that the average hourly rate for new attorneys in Portland was $182 per hour. *Id.* Today, the average hourly rate for a new attorney in Portland is over $50 higher at $236 per hour. Further, Ms. Rodriguez not only has six years of paralegal experience but also has both a paralegal certification and a law degree. In light of these qualifications and the average rate for new attorneys in Portland, the Court finds that the requested rate of $200 for per hour for Ms. Rodriguez is reasonable.

### d. Lodestar Amount

Considering the hours reasonably expended and a reasonable hourly rate for each of Plaintiff's attorneys, this Court's calculation of the lodestar is as follows:

///

///

///

///

///

///

///

///

///

///

///

///

///

| Mr. Napoli | | |
|---|---|---|
| Hours Requested | 485.9 | |
| Hours Deducted | 139.1 | Duplicative or Excessive Hours |
| | 6.9 | Time Spent on Clerical Tasks |
| | 0.71 | 20% reduction for Block Billed Hours (3.6*.20) |
| | 6 | Vague Entries |
| | 0.1 | Unsuccessful Claims |
| | 66.618 | 20% Reduction for Unsuccessful Claims* |
| | | |
| Total Deduction | 219.428 | |
| Hours Awarded | 266.472 | |
| Hourly Rate | 375 | |
| **LODESTAR** | **$ 99,927.00** | |

| Mr. Baker | | |
|---|---|---|
| Hours Requested | 444 | |
| Hours Deducted | 23.7 | Duplicative or Excessive Hours |
| | 9 | Time Spent on Clerical Tasks |
| | 11.3 | 20% reduction for Block Billed Hours (56.5*.20) |
| | 1.4 | Vague Entries |
| | 1.5 | Time spent on Unsuccessful Claims |
| | 79.42 | 20% Reduction for Unsuccessful Claims* |
| | | |
| Total Deduction | 126.32 | |
| Hours Awarded | 364.58 | |
| Hourly Rate | 450 | |
| **LODESTAR** | **$ 164,061.00** | |

| Ms. Bannon Moore | | |
|---|---|---|
| Hours Requested | 377.2 | |
| Hours Deducted | 34.9 | Duplicative or Excessive Hours |
| | 12.5 | Time Spent on Clerical Tasks |
| | 1.68 | 20% reduction for Block Billed Hours (8.4*.20) |
| | 0.1 | Vague Entries |
| | 0.8 | Time spent on Unsuccessful Claims |
| | 65.444 | 20% Reduction for Unsuccessful Claims* |
| Total Deduction | 115.424 | |
| Hours Awarded | 261.776 | |
| Hourly Rate | 275 | |
| **LODESTAR** | **$ 71,988.40** | |

| Ms. Bannon | | |
|---|---|---|
| Hours Requested | 11.4 | |
| Hours Deducted | 2.4 | Duplicative or Excessive Hours |
| | 0.8 | Time Spent on Clerical Tasks |
| | 0.28 | 20% reduction for Block Billed Hours (1.4*.20) |
| | 0.1 | Vague Entries |

| | | |
|---|---|---|
| | 0 | Time spent on Unsuccessful Claims |
| | 1.65 | 20% Reduction for Unsuccessful Claims* |
| Total Deduction | 5.23 | |
| Hours Awarded | 6.17 | |
| Hourly Rate | 250 | |
| **LODESTAR** | **$ 1,542.50** | |

| *Ms. Carlsen* | | |
|---|---|---|
| Hours Requested | 175.2 | |
| Hours Deducted | 31.1 | Duplicative or Excessive Hours |
| | 57.7 | Time Spent on Clerical Tasks |
| | 0.98 | 20% reduction for Block Billed Hours (4.9*.20) |
| | 0.7 | Vague Entries |
| | 1.3 | Time spent on Unsuccessful Claims |
| | 16.684 | 20% Reduction for Unsuccessful Claims* |
| Total Deduction | 108.464 | |
| Hours Awarded | 66.736 | |
| Hourly Rate | 125 | |
| **LODESTAR** | **$ 8,342.00** | |

| *Ms. Johnson* | | |
|---|---|---|
| Hours Requested | 0.9 | |
| Hours Awarded | 0.9 | |
| Hourly Rate | 350 | |
| **LODESTAR** | **$ 315.00** | |

| *Ms. Rodriguez* | | |
|---|---|---|
| Hours Requested | 93.75 | |
| Hours Deducted | 1.5 | Duplicative or Excessive Hours |
| | 62.1 | Time Spent on Clerical Tasks |
| | 0 | 20% reduction for Block Billed Hours |
| | 0 | Vague Entries |
| | 0 | Time spent on Unsuccessful Claims |
| | 9.045 | 20% Reduction for Unsuccessful Claims* |
| Total Deduction | 72.645 | |
| Hours Awarded | 21.105 | |
| Hourly Rate | 200 | |
| **LODESTAR** | **$ 4,221.00** | |

| **LODESTAR TOTAL** | **$ 350,396.90** |
|---|---|

*The 20% reduction was not appplied to hours that were otherwise deducted from the requested total. In other words, the Court multiplied the total requested minus the subtotal of hours deducted by .20.

### e. Adjustments to the Lodestar

Neither party has suggested that the Court should adjust the lodestar amount, and the Court declines to do so.

## II. Costs & Other Expenses

Under § 1988 and Title VII, recoverable costs include those listed in 28 U.S.C. §§ 1920 and 1921 as well as "'those [reasonable] out-of-pocket expenses that would normally be charged to a fee paying client.'" *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)); *Scruggs v. Josephine Cty*, Civil No. 06-6058-CL, 2009 WL 650626, at * 7 (D. Or. Mar. 10, 2009) ("Out-of-pocket expenses and other costs which are not recoverable as taxable costs under 42 U.S.C. § 1920 but are typically charged to a fee-paying client may be allowed by the court as part of an attorney's fee award under 42 U.S.C. § 2000e-5(k)."). Such costs include photocopying, travel costs, and expert fees. *See Frenz v. Quereshi*, No. CV-97-1501-ST, 1999 WL 375584, at *6 (D. Or. Mar. 11, 1999) ("Those recoverable costs include photocopying, paralegal expenses, and travel and telephone costs."); *Ruff v. Cty of Kings*, 700 F.Supp.2d 1225, 1243 (E.D. Cal. 2010) (42 U.S.C. § 1988(c) expressly provides that in § 1981 actions, "the court, in its discretion, may include expert fees as part of the attorney's fee."); *see also* 42 U.S.C. § 2000e-5(k) (allowing recovery for expert fees as part of attorney's fees in Title VII actions).

Plaintiff requests $28,768.94 in costs. Defendant argues for a substantial reduction in Plaintiff's requested costs and contends that Plaintiff, at most, should be awarded $5,867.45.[9] For

---

[9] In addition to the arguments discussed below, Defendant also argued in its opposition that the bill of costs was not properly supported. *See* LR 54.1(a) (requiring the prevailing party to provide a "detailed itemization of all claimed costs" along with "appropriate documentation" and

the reasons described below, the Court awards Plaintiff $21,011.89 in taxable costs and other expenses as part of the fee award.

### a. Costs Associated with Unsuccessful Claims

Defendant suggests that Plaintiff should not be able to recover costs associated with Plaintiff's unsuccessful discrimination claims. "In the event of a mixed judgment . . . it is within the discretion of a district court to require each party to bear its own costs." *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996). The trial court may apportion costs between successful and unsuccessful claims or reduce the amount of costs rewarded based on the prevailing party's relative degree of success. *Pierce v. Cty of Orange*, 905 F. Supp.2d 1017, 1049 (C.D. Cal. Mar. 2, 2012); *see also Cousins v. Kitsap Cty*, No. C. 08-5674 KLS, 2011 WL 5282717, at *10 (W.D. Wash. Nov. 2, 2011) (disallowing costs incurred with relation to the plaintiff's unsuccessful claims). As noted above, however, the evidence and witnesses relevant to each of Plaintiff's claims are not as segregable as Defendant would suggest. Because costs—such as service, witness, mileage, and subpoena fees—would have been incurred for either Plaintiff's harassment or discrimination claims, the Court declines to reduce the bill of costs for the unsuccessful claims.

### b. Costs for Videotaped Depositions

Defendant opposes Plaintiff's request for costs associated with videotaping depositions. Though the Ninth Circuit has yet to address this issue, *see in re Ricoh Co., Ltd. Patent Litigation*,

---

verification by affidavit that the items in the cost bill are correct and necessary and the services actually and necessarily performed."). In his reply, Plaintiff provided additional documentation associated with these costs. Notably, however, Plaintiff still has not provided documentation for many of the claimed costs, such as invoices for deposition transcripts, copying, or parking. However, after reading Defendant's surreply, the Court believes that Defendant has since dropped this argument except as it applies to the phone call with Dr. Dechet, for which Plaintiff provided no invoice.

661 F.3d 1361, 1370 (Fed. Cir. 2011) (noting that the Ninth Circuit has not addressed it but several other circuits have allowed such costs under § 1920(2)), judges in this district have denied requests for costs related to the video recording of depositions, *see Hunt v. City of Portland,* No. CV 08-802-AC, 2011 WL 3555772, at *7 (D. Or. Aug. 11, 2011) (absent a showing of "necessity" under Rule 54, the petitioner could not recover the costs associated with videotaped depositions); *see also U.S. ex rel. Berglund v. Boeing Co.,* No. 03:02-CV-193-AC, 2012 WL 697140, at *3 (D. Or. Feb. 29, 2012) (collecting cases). Plaintiff has the burden of demonstrating why the video deposition was needed and a written transcript would not have sufficed. *Id.*; *cf. adidas Am., Inc. v. Herbalife Int'l, Inc.,* No. 3:09-CV-00661-MO, 2012 WL 13051118, at *1 (D. Or. Sept. 5, 2012) (The court awarded costs for videotaped depositions where the litigation was particularly antagonistic and large-scale, rendering "both video deposition and stenographic transaction costs particularly necessary."). As Plaintiff has not provided any evidence to demonstrate why the video depositions were necessary and this case was neither particularly antagonistic or large-scale, the Court will not allow Plaintiff to recover costs associated with videotaping depositions.

### c. Costs for Trial Transcripts

Defendant argues that, in the absence of factors such as the significant length of a trial or particularly complex issues, costs for trial transcripts are not recoverable. Costs associated with trial transcripts are generally considered taxable costs under 28 U.S.C. § 1920, rather than § 1988. *See Cleavenger v. Univ. of Oregon*, CV 13-1908-DOC, 2016 WL 1065821, at *14 (D. Or. Mar. 16, 2016) (citing *Nemo v. City of Portland*, No. CV-94-1553-ST, 1996 WL 437633, at *8 (D. Or. Apr. 9, 1996)) (noting that daily trial transcripts are awarded, if at all, under 28 U.S.C. § 1920). These "may be taxed if they are 'reasonably necessary' for use in the case," which is

particularly true of unusually involved or complex cases. *Harrington v. City of Portland*, Civ. No. 87-516-FR, 1990 WL 177406, at *3 (D. Or. Nov. 8, 1990); *see also adidas Am. v. Payless Shoesource, Inc.*, Nos. 01-1655-KI (Lead Case), CV 03-1116-KI, 2009 WL 302246, at *3 (D. Or. Feb. 9, 2009) (allowing recovery for trial transcripts where they are "a necessity rather than for the convenience of counsel"). "Factors which indicate complexity include: the number of parties, the number of claims, the number of pretrial hearings, the length of time the action has been pending, and the length of the trial." *Harrington*, 1990 WL 177406, at *3. Here, again, Plaintiff has not demonstrated why he needed daily transcripts in this five-day single-plaintiff employment discrimination trial. Accordingly, the Court also declines to allow these costs.

### d. Costs for Dr. Amy Dechet

Defendant argues that the $400 phone conference fee paid to Dr. Amy Dechet, Plaintiff's treating physician, is not recoverable as she is not an expert witness and the fee associated with preparing her for trial is non-transferrable. The Court agrees with Defendant. Because she testified as a lay witness, Plaintiff cannot recover expert fees for Dr. Dechet. *See Leuzinger v. Cty of Lake*, No. C 06-0398 SBA, 2008 WL 323622, at *4 (N.D. Cal. Feb. 5, 2008) (disallowing expert witness costs for two of Plaintiff's treating physicians who testified based only on their personal knowledge as lay witnesses). And the Court declines to allow Plaintiff to recover the costs associated with Dr. Dechet's testimony as a cost that would normally be charged to a fee-paying client because Plaintiff has provided inadequate support for this cost. The $400 fee is merely described as "Phone Conference Fee-Dr. Dechet." There is no support or invoice for the call. Plaintiff provides no detail regarding the purpose of the call. Instead, Plaintiff merely asserts in his reply that Dr. Dechet was "an essential witness required to rebut Defendant's assertion that

Plaintiff was making up everything." Def. Reply 5. Without more detail, the Court is not inclined to shift the cost of a telephone conference for a non-expert treating physician to Defendant.

### e. Expenses for Private Investigators Kara Beus and Mike Snyder

Defendant argues that the costs associated with private investigators Kara Beus and Mike Snyder are not recoverable for the same reason as many of the attorney's fees and, at a minimum, should be reduced to $12,523.85, the total amount supported by the investigators' invoices. As this Court has indicated previously, "[t]he District of Oregon has allowed the expense of investigator services as a recoverable litigation expense." *Scruggs v. Josephine Cty*, No. CIV. 06-6058-CL, 2009 WL 650626, at *8 (D. Or. Mar. 10, 2009) (collecting cases). In *Scruggs*, the court indicated that such expenses appear to be reasonable if associated with the litigation. *Id.* There, the court allowed the costs associated with a private investigator who produced an important witness. *Id.*.

Here, the Court awards Plaintiff most of the requested fees and costs associated with the private investigators. The investigator's invoices demonstrate that much of their time was spent finding and interviewing witnesses associated with the litigation, which would be time recoverable at a higher rate if it had been billed by an attorney.  Similarly, service fees are properly taxed as costs. *See e.g. Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 178 (9th Cir. 1990) (holding "private process servers' fees are properly taxed as costs" under § 1920). The Court also awards travel expenses as "reasonable out-of-pocket expenses compensable under section 1988." *Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991). The Court, however, will not allow the investigators to recover time that is clearly duplicative of time that was also billed by attorneys or for time spent observing trial. Accordingly, time billed

by Mr. Snyder is reduced by 3.8 hours, and time billed for Ms. Beus is reduced by 9.3 hours. These hours, combined with the hours unsupported by the provided invoices, amount to $2,764.

**f.  Other Costs**

Defendant does not object to Plaintiff's other costs. These include certain deposition transcript costs; copying, filing, service, parking, and postage costs; and fees and costs associated with witnesses.  Plaintiff also requests—and Defendant does not object to—fees associated with the preparation of declarations in support of this motion. The Court awards these costs as either allowable costs under § 1920 or reasonable out-of-pocket expenses normally charged to a fee-paying client.

**CONCLUSION**

Plaintiff's Motions for Attorney's Fees [104] [127] and Bill of Costs [104] are granted in part. Plaintiff is awarded $350,396.90 in fees and $21,011.89 in costs and expenses.

IT IS SO ORDERED.

Dated this _____4_____ day of ___September___, 2018.

MARCO A. HERNÁNDEZ
United States District Judge